**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SUSANA LUKASZEK,** | ) | **COMPLAINT** |
| **Plaintiff,** | ) | |
| **v.** | ) | **JURY DEMANDED** |
| | ) | |
| **MANHATTAN SCHOOL DISTRICT No. 114,** | ) | |
| **BOARD OF EDUCATION OF MANHATTAN** | ) | |
| **SCHOOL DISTRICT No. 114,** | ) | |
| **RUSSELL RAGON, and CHRISTINE RUDDY,** | ) | |
| **Defendants.** | ) | |

## COMPLAINT

NOW COMES, Plaintiff, SUSANA LUKASZEK ("Plaintiff"), by and through her attorneys, Kreitman Law, LLC, with her Complaint against Defendants MANHATTAN SCHOOL DISTRICT No. 114 ("Defendant DISTRICT") BOARD OF EDUCATION OF MANHATTAN SCHOOL DISTRICT No. 114 ("Defendant BOARD"), RUSSELL RAGON ("Defendant Ragon") and CHRISTINE RUDDY ("Defendant RUDDY") (collectively, "Defendants") and states as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 over Plaintiff's claims against Defendants arising from a severe and pervasive hostile work environment on the basis of sex in violation of her right to equal protection under the Fourteenth Amendment to the Constitution of the United States, under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1983 and § 1988

2. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims against Defendants, including violation of the Illinois Civil Rights Act, 740 ILCS 23/1, *et seq.* and the Illinois tort of intentional infliction of emotional distress. Plaintiff

will be moving to include her sexual harassment and constructive discharge claims under Title VII/IHRA upon exhaustion of her administrative remedies as required by the respective statutes.

3. Venue is properly placed in this District because the Defendants are transacting business in this District and because a substantial part of the events or omissions giving rise to the claim occurred in this District pursuant to 28 U.S.C. §1391(b)(2) and (3).

**PARTIES**

4. Defendant MANHATTAN SCHOOL DISTRICT No. 114 ("Defendant DISTRICT") is an Illinois school district organized under the Illinois School Code and 5 ILCS 220, *et seq.*, serving the residents of Manhattan, Illinois. Defendant BOARD maintains an office at 25632 S. Gougar Road, Manhattan, Illinois 60442.

5. Defendant DISTRICT operates the following public schools: **Wilson Creek Elementary School,** 25440 S. Gougar Road, Manhattan, IL 60442; **Anna McDonald School,** 200 Second Street Manhattan, IL 60442; **Manhattan Intermediate School** 15646 W. Smith Road Manhattan, IL 60442; and **Manhattan Junior High School,** 15414 W. Smith Road Manhattan, IL 60442.

6. Defendant BOARD OF EDUCATION OF MANHATTAN SCHOOL DISTRICT No. 114 ("Defendant BOARD"), is an Illinois body corporate, organized pursuant to 105 ILCS 5/10-1, *et seq*. Defendant BOARD maintains an office at the Wilson Creek Elementary School, 25632 S. Gougar Road, Manhattan, Illinois 60442 (the "BOARD OFFICE").

7. In the March 13, 2024, meeting minutes of the Defendant BOARD, the Defendant BOARD summarized the role of the Defendant BOARD as follows:

*Role of a Board Member per ISBE guidelines*

> Board members serve on a volunteer basis, without pay, and do not maintain offices in District buildings. The Board of Education is responsible for hiring the Superintendent, authorizing the appointment of all other staff members, authorizing curriculum

development, levying tax monies and budgeting for both educational programs and operating expenses, and setting District policy.

**DEFENDANT BOARD**

**December 1, 2020 – April 21, 2021**

8. From December 1, 2020, - April 21, 2021, the membership of the Defendant BOARD was as follows:

a. Scott Mancke (sex/gender male), President of Defendant BOARD;
b. Dan DeCaprio (sex/gender male), Vice President of Defendant BOARD;
c. Dawn Murphy (sex/gender female), Secretary of Defendant BOARD;
d. Terry Doyle (sex/gender male), Member of Defendant BOARD;
e. John Burke (sex/gender male), Member of Defendant BOARD;
f. Joe Mitchell (sex/gender male), Member of Defendant BOARD; and
g. Mark Gray (sex/gender male), Member of Defendant BOARD.

**April 21, 2021 – May 10, 2023**

9. From April 21, 2021 – May 10, 2023, the membership of the Defendant BOARD was as follows, with unfortunate passing of Mr. DeCaprio on May 9, 2023:

a. Scott Mancke (sex/gender male), President of Defendant BOARD;
b. Dan DeCaprio (sex/gender male), Vice President of Defendant BOARD, until his untimely passing on May 9, 2023;
c. Mark Gray (sex/gender male), Secretary of Defendant BOARD;
d. Terry Doyle (sex/gender male), Member of Defendant BOARD;
e. John Burke (sex/gender male), Member of Defendant BOARD;
f. Barbara Steffen (sex/gender female), Member of Defendant BOARD; and
g. Emily Dotzenrod a/k/a Emily Wesel (sex/gender female), Member of Defendant BOARD.

**May 10, 2023 – February 29, 2024**

10. Following Mr. Mancke’s resignation from the position of President of Defendant Board, on or about February 29, 2024, the membership of the Defendant BOARD was as follows:

a. John Burke (sex/gender male), President of Defendant BOARD;
b. Emily Dotzenrod a/k/a Emily Wesel (sex/gender female), Vice President of Defendant BOARD;
c. Terry Doyle (sex/gender male), Secretary of Defendant BOARD;
d. Barbara Steffen (sex/gender female), Member of Defendant BOARD;

e. Cheryl Donovan (sex/gender female), Member of Defendant BOARD; and
f. Ryan Gulli (sex/gender male), appointed June 5, 2023, to fill vacancy of Dan DeCaprio, Member of Defendant Board.

11. On June 12, 2024, Mr. Gulli resigned from the Defendant BOARD and assumed a position as the Chief of Police for the Village of Manhattan.

12. On June 12, 2024, Ms. Donovan resigned from the Defendant BOARD and assumed employment with Defendant DISTRICT as Curriculum Director.

**DEFENDANTS RUSSELL RAGON AND CHRISTINE RUDDY**

13. In the March 13, 2024, meeting minutes of the Defendant BOARD, the Defendant BOARD summarized the role of the Superintendent as follows:

*The Role of a Superintendent in Illinois*

> The School Board employs and evaluates the Superintendent and holds him or her responsible for the operation of the District in accordance with Board goals, policies, and State and federal law. The Board considers the recommendations of the Superintendent as the District's Chief Executive Officer. The Board adopts policies necessary to provide general direction for the District and to encourage achievement of District goals. The Superintendent develops plans, programs, and procedures needed to implement the policies and directs the District's operations

14. Defendant RUSSELL RAGON ("Defendant RAGON"), resides in Illinois and his sex and gender is male.

15. At all times material to this Complaint, Defendant RAGON was the Superintendent of Defendant DISTRICT until his retirement submitted via letter to the Defendant BOARD dated February 16, 2024, with an effective date March 1, 2024.

16. On February 22, 2024, the Defendant BOARD appointed Ron Pacheo, PhD. as Interim Superintendent for Defendant DISTRICT.

17. Defendant CHRISTINE RUDDY ("Defendant RUDDY"), resides in Illinois and her sex and gender is female.

18. Defendant RUDDY was employed by Defendant District with the title of Director of Human Resources Professional Development and Communications for Defendant DISTRICT from on or about July 1, 2022, until her resignation submitted via letter to the Defendant BOARD dated February 16, 2024, effective March 1, 2024.

19. Plaintiff is a resident of this judicial district.

20. Plaintiff's sex and gender is female.

21. At all times material to this Complaint, Defendants had actual knowledge of Plaintiff's female sex and gender.

## FACTUAL ALLEGATIONS

22. On or about October 14, 2020, as reflected in the Defendant BOARD's meeting minutes, the Defendant BOARD approved via vote, for Defendant RAGON to hire an "administrative assistant to begin training for HR/Personnel Dept." as the Defendant DISTRICT did not have a human resources department.

23. On or about December 2020, Defendant RAGON hired the Plaintiff as the Defendant BOARD's Payroll and Benefits Coordinator,

24. Her job responsibilities included most human resources director responsibilities, including employee personnel records, new hire paperwork, substitute teacher paperwork, insurance and benefits and state reports.

25. At or around her hire, Defendant RAGON explained to Plaintiff the position would essentially be the human resources director for Defendant DISTRICT.

26. At all times material to this Complaint, Defendant RAGON was a supervisor of Plaintiff.

27. At all times material to this Complaint, Plaintiff was qualified for the position of Payroll Benefits Coordinator.

28. At all times material to this Complaint, Plaintiff performed to the legitimate employment expectations of Defendant BOARD.

29. Upon information and prior to Plaintiff's hire, Defendant RAGON had been the subject of a sexual harassment complaint by another Defendant BOARD employee.

30. Following Plaintiff's hire and throughout her employment until the end of her employment on or about January 10, 2023, Plaintiff was consistently propositioned for sex by Defendant RAGON in-person at the BOARD OFFICE.

31. These propositions included sex at the workplace, sex in automobiles, sex in hotels and sex at various other locations. A number of times, these propositions included time off to meet him at a hotel during their shared workday for sex.

32. These constant propositions for sex from Defendant RAGON were refused by Plaintiff, were unwanted by Plaintiff and made her feel extremely uncomfortable.

33. On a near daily basis, during the entirety of Plaintiff's employment, Defendant RAGON subjected Plaintiff to constant and unwanted sexually graphic and lewd banter in the workplace, showed Plaintiff sexually explicit photographs and videos, commented on Plaintiff and other employees in a lewd and sexual manner, aired his sexual frustrations and recounting his sexual escapades with other women to Plaintiff. These conversations were unwelcome by Plaintiff would take place at length and often interfere with Plaintiff's ability to work.

34. Defendant RAGON constantly emphasized to Plaintiff that all of his conversations with her about sex must be kept hidden.

35. As a result of Plaintiff rejecting his advances and refusing to engage in his sexualized work culture, Defendant RAGON did not advance Plaintiff in a human resources management position.

36. Plaintiff was qualified for a human resources management position, or in the alternative would have been qualified had Defendant RAGON provided her adequate professional development opportunities.

37. Instead, Defendant RAGON decided he would hire one of his romantic partners for a position in human resources management - Defendant RUDDY - so that he could engage in sexual relations and sexual banter in the workplace.

38. On or about March 9, 2022, at Defendant RAGON's instigation, the Defendant BOARD voted to authorize Defendant RAGON to post a position for an entirely new position, "Director of HR/PD/Communications".

39. On or about March 24, 2022, the Defendant BOARD held a special meeting, voting to approve the hiring of Defendant Ruddy as the Director of Human Resources, Professional Development and Communications for the Defendant DISTRICT, starting July 1, 2022, at a salary substantially higher than Plaintiff's salary.

40. Around this time Defendant RAGON introduced Defendant RUDDY to Plaintiff and informed her he was going to hire Defendant RUDDY and that Plaintiff would report to her.

41. Defendant RAGON began compensating Defendant RUDDY from Defendant DISTRICT funds prior to her hire by Defendant BOARD on July 1, 2022, for her visits to the Defendant BOARD's office to romantically visit with Defendant RAGON.

42. Defendant RUDDY officially began her employment Defendant DISTRICT on July 1, 2022, and was Plaintiff's direct supervisor.

43. Plaintiff was already competently performing many of the assigned duties of the HR Director prior to Defendant RUDDY's hire.

44. Plaintiff was qualified for the position of HR Director or an equivalent title with equivalent responsibilities. The title was invented at the instigation of Defendant RAGON to hire Defendant RUDDY.

45. Plaintiff was not considered for and was not hired for the HR Director position as a direct and proximate result of her refusal to submit to Defendant RAGON's sexual advances and conduct.

46. After Defendant RAGON's hiring of Defendant RUDDY, Defendant RAGON began frequently having intimate relations with Defendant RUDDY and Defendant RAGON began recounting his sexual encounters with her to Plaintiff.

47. Defendant RAGON also instructed Plaintiff to keep his intimate encounters with Defendant RUDDY secret.

48. Defendant RAGON's instructions and the sharing of his intimate encounters were unwelcome by the Plaintiff.

49. Defendant RAGON also began inviting Plaintiff to have sexual encounters at the Defendant BOARD's office, hotels, and other places with himself and Defendant RUDDY and/or with Plaintiff and her husband, including during work hours. These invitations were refused and unwelcome by the Plaintiff.

50. Defendant RAGON began regularly showing Plaintiff graphic and explicit photographs of Defendant RUDDY and of himself with Defendant RUDDY. This was unwelcome by the Plaintiff.

51. Towards the end of 2022, Defendant RUDDY and Defendant RAGON would start having intimate relations for long periods of time during the workday, including at the BOARD OFFICE, and Defendant RAGON would describe these encounters to Plaintiff. This was unwelcome by the Plaintiff.

52. During this time, at least two male Defendant BOARD members would occasionally visit the Defendant BOARD's office and make sexually lewd jokes in front of or *to* Plaintiff.

53. During this time, at least one male Defendant BOARD member remarked that he frequently noticed Defendant RAGON and Defendant RUDDY were in closed door meetings together during the work day.

54. During this time, Defendant RUDDY and Defendant RAGON would also abuse comp-time and other off-site privileges for romantic rendezvous.

55. This working environment was objectively intolerable and subjectively intolerable to Plaintiff and as a direct and proximate result, the Plaintiff gave notice on November 8, 2022, of her resignation effective January 10, 2023.

56. When Defendant RAGON accepted Plaintiff's resignation letter, Defendant RAGON asked if she was going to add to the Defendant BOARD about how much of a "stud" he was.

57. On or about November 15, 2022, Plaintiff overheard a male Defendant BOARD member making a lewd sexual joke to a female employee.

58. The same day, Defendant RAGON began complaining about his wife sexually to the Plaintiff, and then began comparing Plaintiff to his wife. This conversation was unwelcome to the Plaintiff.

59. On or about December 6, 2022, Defendant RAGON informed Plaintiff there was still time for him to "get something out of her" referring to sex. He also stated that Plaintiff could take the money out of the Defendant BOARD's safe, meet in Florida and split the money. This offer was refused by Plaintiff and this comment was unwelcome to Plaintiff.

60. In December 2022, Defendant RAGON and Defendant RUDDY began being absent from the Defendant BOARD's office more frequently during the workday for intimate encounters and was observed by the Plaintiff and other staff.

61. On or about December 8, 2022, Defendant RAGON again reminded Plaintiff there was still time for her to "take him up" on his offer to have sex with her. Defendant RAGON then showed Plaintiff a sexually explicit photograph of Defendant RUDDY, telling Plaintiff he was sending it to Plaintiff's husband so it would be "fresh" on Plaintiff's husband's mind when she got home and promised to send him another the following day. This was unwelcome to the Plaintiff.

62. On or about December 9, 2022, a male member of the Defendant BOARD visited the Defendant BOARD's office and told lewd jokes to Plaintiff and other female employees at Defendant BOARD. This included asking Plaintiff if she had ever had a French kiss, and if she knew what an Australian kiss was (the punchline was it was a kiss "down under"). This was unwelcome to the Plaintiff.

63. Defendant RAGON's extreme and outrageous conduct towards Plaintiff continued through her end of employment on January 10, 2023, and continued thereafter with constant extreme and outrageous solicitations and communications until Defendant RAGON received notice of Plaintiff's Illinois Human Rights Act charge against him in October 2023.

64. From the time of her resignation letter to January 10, 2023, the aforementioned unwelcome sexual conduct of Defendant RAGON and Defendant RUDDY continued and included at least two propositions for a sexual encounter during the Christmas break prior to her end date, including on or about December 27, 2022, and on or about January 3, 2023. These propositions were unwelcome and refused by Plaintiff.

65. This conduct was extreme and outrageous, was intentional and/or committed by Defendants RAGON and RUDDY in reckless disregard of the reasonably foreseeable severe

distress it would cause Plaintiff and in fact did cause Plaintiff and constituted a continuing action in violation of Plaintiff.

66. The sexual harassment endured by Plaintiff was beyond objectively offensive and was experienced by Plaintiff as absolutely degrading and a violation of her rights and the rights on any employee in the workplace.

67. The sexual harassment experienced by Plaintiff was objectively intolerable and constituted a materially adverse change in the terms and conditions and prompted her to leave her employment with the Defendant DISTRICT.

68. The sexual harassment was pervasive and constituted a single continuing action against the rights and dignity of Plaintiff in the Defendant BOARD's workplace and continued thereafter.

69. As a direct and proximate result of this intolerable sexual harassment, Plaintiff tendered a resignation notice on or about November 8, 2022, and resigned effective January 10, 2023.

70. On January 10, 2023, Plaintiff was constructively discharged because of the intolerable work environment.

71. As a direct and proximate result of this intolerable sexual harassment, Plaintiff suffered extreme emotional distress and other damages.

72. As a direct and proximate result of her denied promotion in March 2022 and constructive discharge on January 10, 2023, Plaintiff has suffered lost income and suffered other pecuniary and non-pecuniary damages.

73. This Complaint does not recite all of the Defendants' sexual misconduct on and off school property that transpired at issue in this matter and only summarizes the misconduct sufficient to satisfy the federal notice pleading standard.

**<u>COUNT I</u>**
**42 U.S.C. §1983**
**Equal Protection / Sexual Harassment / Substantive Due Process and Deprivation of Liberty**
**Plaintiff v. All Defendants**

74. Plaintiff re-states and incorporates Paragraphs 1-73 of this Complaint herein this Paragraph of Count I.

75. At all times material to this Complaint, Defendants BOARD and RAGON acted under color of law at all times as Plaintiff's supervisors during Plaintiff's employment with the Defendant BOARD.

76. Defendants intentionally subjected Plaintiff to unequal and discriminatory treatment because of her female by requiring Plaintiff to suffer constant sexual harassment by Defendant RAGON and Defendant RUDDY, and through the disparate treatment of Plaintiff in promotional opportunities for her refusal to engage in sex with Defendant RAGON.

77. During Plaintiff's employment with Defendant DISTRICT, Defendants maintained a *de facto* policy, practice, and/or custom of tolerating and acquiescing in the outrageous and pervasive sexual misconduct of Defendants RAGON and RUDDY towards female employees Defendants RAGON AND RUDDY supervised, including but not limited to Plaintiff, and other female employees Defendant RAGON frequently expressed a desire to consummate relations or derogated to Plaintiff. As alleged by Defendant RUDDY in her own pending Title VII lawsuit against the Defendant DISTRICT, she was also a victim of this implicit gender bias in her employment.

78. Defendant RAGON's egregious violation of Plaintiff's rights to equal protection as a woman in the workplace included a substantive due process violation – conditioning her advancement to HR director on the deprivation of Plaintiff's liberty and bodily autonomy.

79. Less severe, but nonetheless illustrative, was the denial of Plaintiff the same leave and compensation Defendant RAGON was permitted to afford Defendant RUDDY to accommodate and conceal their romantic encounters.

80. This *de facto* policy of the Defendants is further supported by the lewd sexual remarks about women from the various Defendant BOARD members, the failure of the Defendant BOARD to adequately or even minimally supervise and/or evaluate and/or train and/or discipline Defendant RAGON and Defendant RUDDY and the complete failure to create a culture of accountability, including the failure to hold Defendant RAGON accountable for his prior sexual misconduct known to the Defendant BOARD, among other facts alleged herein.

81. Defendants' *de facto* policies, practices, and/or customs proximately resulted in the intolerable sexual harassment of Plaintiff, denying her equal protection under the law because of her female sex and denial of her substantive due process rights.

82. The sexually and sex-based offensive conduct experienced by Plaintiff was unwanted, extreme, outrageous, severe and pervasive to the extent it altered the conditions of Plaintiff's employment and created an abusive working environment causing Plaintiff's constructive discharge on January 10, 2023.

83. This sexual harassment, denial of promotional opportunity to HR Director and the intolerable working environment that proximately caused Plaintiff's constructive discharge on or about January 10, 2023, was because of Plaintiff's female sex.

84. The sexual harassment had the effect of unreasonably interfering with the Plaintiff's work performance and created an objectively intimidating, hostile and offensive working environment for women, including Plaintiff.

85. Following Plaintiff coming forward to the Illinois Department of Human Rights and the Equal Employment Opportunity Commission in October 2023, Defendants were each

provided a detailed preservation of evidence notice by Plaintiff's counsel and by these respective agencies, along with a detailed statement executed by Plaintiff.

86. Upon receipt of these documents in October 2023, Defendant RAGON proceeded to delete material evidence in disregard of these notices.

87. Defendant BOARD either had actual knowledge of the destruction of material evidence subject to the preservation notice, or constructive knowledge as the destruction would have been identified if an adequate investigation into his conduct has been performed by the Defendant BOARD.

88. Following Plaintiff's filing with the Illinois Department of Human Rights and Equal Employment Opportunity Commission, Plaintiff's counsel subsequently orally communicated to Defendant BOARD's counsel and provided clear evidence of Defendant RAGON and Defendant RUDDY's extreme and outrageous misconduct during school hours at the BOARD OFFICE.

89. According to Defendant RUDDY's own Title VII lawsuit on file in this Court alleging sex discrimination by Defendant BOARD, Defendant RUDDY was requested and did provide additional evidence of her misconduct with Defendant RAGON to Defendant BOARD prior to her resignation.

90. In accordance with the complained of *de facto* policy of permitting sexual misconduct and harassment and as reflected in the published minutes, the Defendant BOARD never raised Defendant RAGON's or Defendant RUDDY's misconduct or employment status as a subject of discussion of vote in any open or closed session of a Defendant BOARD meeting.

91. Rather, Defendant BOARD ratified Defendant RAGON's actions herein, *after* obtaining graphic actual knowledge of what transpired by accepting his notice of retirement dated

February 16, 2024, and providing him the courtesy of taking approximately two weeks of vacation until a consequence-free retirement.

92. Similarly, though disparately as argued by Defendant RUDDY in her pending Title VII lawsuit against the Defendant BOARD, the Defendant BOARD also ratified Defendant RUDDY's actions herein.

93. Contravening established practice to vote in closed session on whether to accept an employee's tendered resignation, as reflected through months of Defendant BOARD meeting minutes, the Defendant BOARD apparently accepted Defendant RUDDY's February 16, 2024, resignation letter, without any published closed session vote, and also permitted her to take her remaining vacation until March 1, 2024.

94. The Defendant BOARD's failure to take any type of official disciplinary action against either Defendant RAGON or Defendant RUDDY under the circumstances and evidence known to the Defendant BOARD constituted constructive ratification and approval of their misconduct towards the Plaintiff.

95. Defendant BOARD through counsel, admitted that it generated no documents as to the separation of Defendant RUDDY in its FOIA response on April 16, 2024, producing only the resignation letter of Defendant RUDDY and two Facebook messenger chats from members of the public, and responding as follows:

> 4. All records related to the separation from employment with Manhattan School District No. 114 of Christine Ruddy, including any text messages on any cell phone of any members of Board of Education and/or emails;
>
> ANSWER: Please see the attached Resignation Letter from Christine Ruddy and text message exchange. The District has no other documents responsive to this request.

96. The veracity of this response is questioned by Defendant RUDDY in her pending lawsuit alleging that she was "forced" to resign via her letter submitted to the Defendant BOARD on February 16, 2024.

97. Nonetheless, at the special session held February 22, 2024, the Defendant BOARD enthusiastically ratified with the performance of the administration of Defendant RUDDY and Defendant RAGON with the Defendant BOARD's meeting minutes closing with the following:

"*The Board thanked all of the teachers, administrators, and staff for running the show*!".

98. Defendants, and each of them, had knowledge of the conduct complained of herein and intentionally refused and knowingly chose not to take action to terminate or correct such conduct, although having the power and authority to do so.

99. Defendants' actions as alleged above were done pursuant to the complained of *de facto* policies, patterns, practices and/or customs of official conduct of acquiescence and deliberate indifference to egregious sexual harassment and misconduct by Defendant RAGON and Defendant RUDDY.

100. Said interrelated *de facto* policies, patterns, practices and/or customs, as set forth above, individually and together, were maintained and implemented with actual knowledge and deliberate indifference and by requiring Plaintiff to suffer the aforesaid incidents of sexual harassment during her employment and constituted a single continuing materially adverse employment action.

101. Defendants' actions and deliberate inactions were and are the direct and proximate cause of the constitutional violations and injuries suffered by the Plaintiff, including the denial of promotion to a human resources management position on or about March 24, 2022, and substantive due process rights, a continuing hostile work environment, and her constructive discharge on January 10, 2023.

102. The actions of the Defendants violated the equal protection rights of Plaintiff, including the right to be free from sexual harassment by the Defendants under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

103. The actions of the Defendants violated Plaintiff's right to substantive due process and deprivation of her liberty and bodily autonomy.

104. Defendants' actions have caused Plaintiff to suffer pecuniary and non-pecuniary damages, including but not limited to loss of promotion opportunity, constructive discharge, severe emotional distress, and other damages.

105. Defendants' actions were intentional, willful, and malicious and in reckless disregard for Plaintiff's rights as secured by 42 U.S.C. § 1983.

WHEREFORE, Plaintiff prays this court to enter judgment on her behalf and against Defendants for:

A. Declaratory relief;
B. Backpay and lost wages and benefits which Plaintiff has suffered as a result of the unlawful employment practices, including pre-judgment interest as permitted by law;
C. Full Compensatory damages;
D. Punitive Damages as permitted by law;
E. Attorneys' fees and costs; and
F. Such other and further relief as the Court deems appropriate.

**COUNT II**
**Violation of the Illinois Civil Rights Act, 740 ILCS 23/5**
**Plaintiff v. Defendants MANHATTAN SCHOOL DISTRICT No. 114 and BOARD OF EDUCATION OF MANHATTAN SCHOOL DISTRICT No. 114**

106. Plaintiff re-states and incorporates Paragraphs 1-73 of this Complaint herein this Paragraph of Count II.

107. At all times material to this Complaint, Defendants BOARD and DISTRICT were each a unit of local government within the meaning of 740 ILCS 23/5(a).

108. At all times material to this Complaint, Defendant RAGON was acting within the scope and course of his employment with Defendant BOARD as Superintendent and as Plaintiff's supervisor during Plaintiff's employment with Defendant DISTRICT.

109. At all times during her employment with the Defendant BOARD, Defendant RUDDY was acting within the scope and course of her employment with the Defendant BOARD as HR Director as Plaintiff supervisory during Plaintiff's employment with Defendant DISTRICT.

110. As set forth herein, the Defendant BOARD and DISTRICT, through the actions of its agents Defendant RAGON and Defendant RUDDY and through their own actions and inactions, proximately caused Plaintiff to experience a sexually hostile work environment constituting a single continuing materially adverse employment action because of Plaintiff's female sex.

111. The sexually and sex-based offensive conduct experienced by Plaintiff was unwanted, extreme, outrageous, severe and pervasive to the extent it altered the conditions of Plaintiff's employment and created an abusive working environment.

112. The sexual harassment had the effect of unreasonably interfering with the Plaintiff's work performance and created an objectively intimidating, hostile and offensive working environment for women, including Plaintiff.

113. This sexual harassment, including the denial of promotional opportunity to HR Director and the intolerable working environment that proximately caused Plaintiff's constructive discharge on or about January 10, 2023, was because of Plaintiff's female sex.

114. On March 29, 2022, Defendant RUDDY was hired for the position the Defendant BOARD previously authorized Plaintiff be trained for because Plaintiff refused Defendant RAGON's sexual advances, constituting a materially adverse action because of Plaintiff's female sex.

115. On January 10, 2023, Plaintiff was constructively discharged because of her female sex to leave the objectively intolerable working environment caused by of the sexual harassment created by Defendants BOARD and DISTRICT, constituting a materially adverse employment action.

116. As set forth herein, the Defendants through their own actions and inactions operated to discriminate against Plaintiff on the basis of her female sex and gender in the course of her employment with Defendant DISTRICT, in violation of 740 ILCS 23/5(a)(1).

117. As a direct and proximate result of this violation of 740 ILCS 23/5(a)(1), Plaintiff has suffered actual damages, including disparate treatment in comp-time, the lost wages resulting from the denial of her promotion opportunity on or about March 24, 2022, and the actual damages sustained as a result of Plaintiff's constructive discharge on January 10, 2023, and Plaintiff has incurred attorney's fees and costs in prosecuting this action.

118. As set forth herein, the Defendants conducted a method of administration that had the effect of discriminating against Plaintiff on the basis of her female sex and gender in the course of her employment with Defendant DISTRICT, in violation of 740 ILCS 23/5(a)(2).

119. As a direct and proximate result of this violation of 740 ILCS 23/5(a)(2), Plaintiff has suffered actual damages, and other forms of cognizable harm of the type intended to be

vindicated by this statute, including lost wages and Plaintiff has incurred attorney's fees, litigation expenses and costs in prosecuting this action.

WHEREFORE, Plaintiff prays this court to enter judgment on her behalf and against Defendants BOARD and DISTRICT, jointly and severally, for:

A. Declaratory relief;
B. Actual damages for Backpay and lost wages and benefits which Plaintiff has suffered as a result of the unlawful employment practices, including pre-judgment interest as permitted by law;
C. Attorneys' fees, litigation expenses and costs; and
D. Such other and further relief as the Court deems appropriate.

**COUNT III**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**Plaintiff v. Defendants RAGON and RUDDY**

120. Plaintiff re-states and incorporates Paragraphs 1-73 of this Complaint herein this Paragraph of Count III.

121. As described herein, Defendant RAGON and Defendant RUDDY engaged in a continuing course of extreme and outrageous behavior in the scope and course of their employment with Defendant BOARD against Plaintiff they knew would cause severe emotional distress to Plaintiff.

122. This conduct was objectively outrageous and subjectively perceived as such by Plaintiff.

123. Alternatively, Defendant RAGON and Defendant RUDDY consciously disregarded the reasonable foreseeable risk of severe emotional distress to Plaintiff from their continuing course of extreme and outrageous behavior to Plaintiff as described herein.

124. Defendants' RAGON and RUDDY's continuing course of actions and deliberate inaction constituted the tort of intentional infliction of emotional distress and were the direct and proximate cause of the severe emotional distress suffered by the Plaintiff as alleged herein.

125. The conduct of Defendants RAGON and RUDDY was willful and merits the imposition of punitive damages.

WHEREFORE, Plaintiff prays this court to enter judgment on her behalf and against Defendants RAGON and RUDDY, jointly and severally, for:

A. Compensatory damages to make Plaintiff whole;

B. Punitive Damages in an amount to punish and deter their outrageous misconduct; and

C. Such other and further relief as the Court deems appropriate.

**JURY TRIAL DEMANDED ON ALL AVAILABLE COUNTS.**

Respectfully submitted,

KREITMAN LAW, LLC.

By: __/s/ Nicholas Kreitman
Nicholas Kreitman
Plaintiff's Attorney

Nicholas Kreitman
Kreitman Law, LLC
#6313283
505 North La Salle Dr.
Suite 500
Chicago, IL 60654
(847) 970-0575
njk@kreitmanlaw.com